DECISION AND JUDGMENT ENTRY {¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant, Christopher G., Sr. and Angela B., and awarding permanent custody of their children to appellee, Lucas County Children Services ("LCCS").
 {¶ 2} On January 20, 2004, LCCS filed a complaint in dependency and a petition for a shelter care hearing in which it asked for temporary custody of Christopher G., Jr., born May 28, 2002. The complaint alleged that Angela was charged with murder, child endangerment, and involuntary manslaughter arising from the death of her two year old son, Hassani B. The child died from hypothermia/cardiac arrest after being placed in a bathtub of cold water for an extended period of time. At the time of Hassani's death, Angela was eight months pregnant with another child, Christiana, born February 10, 2004. Appellant is the father of Christopher, Jr. and Christiana. After holding a shelter care hearing, the juvenile court granted the motion and awarded temporary custody of Christopher to LCCS.
 {¶ 3} An amended complaint and motion for a shelter care hearing was filed on February 12, 2004. In this complaint, LCCS asked the court to declare that Christiana was a dependent child and sought temporary custody of Christiana. The complaint asserted that appellant, who was only 20 years old at the time, tested positive for marijuana on February 5, 2004. A second amended complaint alleged that appellant needed "intensive outpatient treatment" for drug abuse, had a history of violence toward Angela, and was "physically rough" with the children.
 {¶ 4} Prior to an adjudicatory hearing on the allegations of dependency, the children's guardian ad litem, Karen Fischer, filed a report in which she noted that Christopher, Jr. had some developmental delays and "unexplained scarring" on his abdomen. According to Fischer, Christiana tested positive for hepatitis when she was born. Her report asserted that appellant had a history of violence that included cruelty to animals, that he was not employed, that he admitted that he "smoked marijuana" since he was 14, and that he resided with an uncle at the time. Fischer stated that it would be in the best interest of the children to award temporary custody to LCCS.
 {¶ 5} On April 20, 2004, the court below adjudicated Christopher, Jr. and Christiana dependent children and awarded temporary custody to LCCS. Both children were placed in the same foster home. The children services agency formulated case plans for both parents. Angela, who was convicted of murder and two counts of child endangerment, will spend at least 15 years in prison. The goal of appellant's original case plan was reunification with his children. To achieve that goal, appellant was required to undergo substance abuse assessment and treatment, to address his depression through counseling with a mental health provider, to take parenting classes, to establish paternity of his children, and to visit and support Christopher, Jr. and Christiana.
 {¶ 6} Appellant failed to comply with some aspects of his case plan, including a failure to engage in substance abuse treatment and to finish a course in domestic violence. During Angela's criminal trial, appellant threatened a juror and was jailed on a charge of disorderly conduct. Therefore, on December 30, 2004, LCCS filed a motion for permanent custody of his two children. Appellant, however, subsequently entered an inpatient drug treatment program, began parenting classes, and started to attend a six month domestic violence program. Because appellant made these efforts to comply with his case plan and expressed a desire to parent his children, LCCS dismissed its motion for permanent custody.
 {¶ 7} On November 22, 2005, LCCS filed a second motion for permanent custody. At the R.C. 2151.414 hearing held on that motion, evidence was offered to show that Angela would not be able to participate in her case plan due to her incarceration and would not be able to parent her children within a reasonable period of time. With regard to appellant, the evidence demonstrated that appellant entered a residential drug treatment program at Fresh Attitudes in January 2005, but was asked to leave in August 2005 due to inappropriate conduct. Thereafter, appellant resided with his mother. He continued using drugs and tested positive for marijuana a number times. His mother is unemployed, and appellant makes money by doing "odd jobs" for which he is paid "under the table."
 {¶ 8} Appellant did complete domestic violence counseling and individual counseling that was recommended for the purpose of addressing his depression. Nevertheless, he never met with a psychiatrist so that he could obtain medication for that condition. Moreover, appellant admitted that he never told the counselor how he was feeling. Instead, he just talked about his job (when he had one), his day, or his children.
 {¶ 9} Although appellant did not participate in a recommended interactive parenting class, he did finish a "non-interactive" class at Aurora Gonzales Community Center. An interactive class was recommended because of appellant's behavior during visits with his children. His mother interacted with the children while appellant read a book, stretched out on a couch, or played a video game. At other times, appellant had difficulty when he tried to supervise Christopher and Christiana. At the inception of this case, appellant's visits were supervised, but later he was allowed unsupervised visitation. Nonetheless, because he relapsed, was not participating in any services, and was not attending to the children, supervised visits were reinstituted. Eventually, appellant told his caseworker that he wanted six more months because he had to focus on his needs, not the children's needs.
 {¶ 10} On May 26, 2006, the trial court terminated appellant's and Angela's parental rights and awarded permanent custody of Christopher, Jr. and Christiana to LCCS. The court found that clear and convincing evidence was offered to show the children could not be placed with either of their parents within a reasonable time or should not be placed with either of their parents. The court also found that the children were in the temporary custody of LCCS for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999.
 {¶ 11} As to appellant, the court determined that after the children were placed outside the home, and despite the efforts of LCCS to substantially remedy the conditions that cause their removal, appellant continuously and repeatedly failed to remedy those conditions. Specifically, the court held that appellant was unable or unwilling to provide his children with food, clothing, shelter, and the other basic necessities of life or to prevent them from suffering physical, emotional, or mental neglect. See R.C. 2151.414(E)(14). Additionally, the judge determined that appellant's substance abuse was so severe that it rendered him unable to provide an adequate permanent home for Christopher, Jr. and Christiana at the present time or within one year after the permanent custody hearing. See R.C. 2151.414(E)(4). Finally, the court concluded that clear and convincing evidence was offered to show that it was in the best interest of these children to award permanent custody to LCCS.
 {¶ 12} Appellant appeals the juvenile court's judgment and claims that the following error occurred in the proceedings below:
 {¶ 13} "The trial court erred when it found by clear and convincing evidence that permanent custody of the children should be awarded to Lucas County Children Services Board."
 {¶ 14} Before a juvenile court can terminate parental rights and award permanent custody of a child to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody standard set forth in R.C.2151.414(B). The court must find that clear and convincing evidence establishes that one of these requisites exists: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999, and that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents, R.C. 2151.414(B)(1)(a); (2) the child is abandoned, R.C.2151.414(B)(1)(b); (3) the child is orphaned and has no relatives who are able to take permanent custody, R.C. 2151.414(B)(1)(c); or (4) the child was in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. R.C.2151.414(B)(1)(d).
 {¶ 15} The juvenile court must also find that clear and convincing evidence shows that permanent custody is in the best interest of the child, pursuant to the factors set forth in R.C. 2151.414(D). In reWilliam S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that evidence which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 16} Appellant does not argue that the trial court lacked clear and convincing evidence to support an R.C. 2151.414(B)(1)(d) finding and/or a R.C. 2151.414(B)(1)(a) finding. He complains only that clear and convincing evidence does not support the finding that it is in the best interest of Christopher, Jr. and Christiana to award permanent custody to LCCS.
 {¶ 17} R.C. 2151.414(D) requires a juvenile court to consider all relevant factors, including, but not limited to the following, in determining the best interest of a child:
 {¶ 18} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 19} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 20} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 21} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 22} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 23} As applied to the present case, testimony at the permanent custody hearing revealed that a number of relatives, including appellant's mother, requested that they be allowed to take custody of appellant's children. Some of those relatives did not follow through after showing an initial interest and others, including appellant's mother, received negative home studies. For example, the first home study on appellant's mother was negative because appellant and two of his friends were using marijuana in her house when the investigator arrived. The second home study raised concerns about the mother's stability. At that time, she was residing with a man who had a felony record. In addition, the results of a psychological evaluation of appellant's mother revealed concerns about her mental health.
 {¶ 24} Although Christopher, Jr. and Christiana were too young to express their wishes concerning custody, their guardian ad litem and appellant's caseworker recommended that it would be in the best interest of the children to grant permanent custody to LCCS. As stated previously, both children were placed in the same foster home. Christopher, Jr. is developmentally delayed, but "has made great strides in his development" while in foster care. Both of these very young children are in need a legally secure placement. Because of appellant's addiction and their mother's incarceration, this goal cannot be achieved without a grant of permanent custody to LCCS. Finally, both children have been in the custody of LCCS for more than 12 months of a consecutive 22 month period ending after March 18, 1999. We therefore conclude that clear and convincing evidence was offered to establish that it is the best interest of Christopher, Jr. and Christiana to award permanent custody to LCCS, and appellant's sole assignment of error is found not well-taken.
 {¶ 25} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.