DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Fulton County Court of Common Pleas, Juvenile Division, wherein the trial court terminated the parental rights of Dawn U. and awarded permanent custody of her minor child, Henry M., to appellee, Fulton County Department of Job Family Services ("Fulton County Family Services"). The following facts are pertinent to our disposition of this cause. *Page 2 
 {¶ 2} On May 6, 2005, Fulton County Family Services filed a complaint in dependency and neglect seeking custody of Henry M., who was one day old. The complaint alleged that appellant suffered from a congenital birth disorder that causes malformed bones and mental retardation. Appellee also claimed that Henry had a 50 percent chance of having the same disease. In its complaint, appellee further asserted that appellant previously had a 17 day old baby removed from her custody due to the physical abuse of the child. In addition, the complaint stated that appellant was living with her father, Roy M., "who was convicted of sexually molesting eight of his children, which resulted in one of his daughters becoming pregnant."
 {¶ 3} After appellant was appointed an attorney and a guardian ad litem was appointed for Henry, all parties were served with the complaint, including Henry's two putative fathers. The putative fathers, as well as a "John Doe father," were served by publication, but never appeared in the proceedings below. By agreement of the parties, Henry was adjudged a dependent child and temporary custody of the baby was awarded to Fulton County Family Services.
 {¶ 4} Initially, reunification of appellant and Henry was not appellee's objective. Later, however, amended case plans were formulated for both appellant and Henry. As part of her case plan, appellant was ordered to undergo psychological testing to determine her "parenting capacity." Wayne J. Graves, Ph.D., a psychologist, evaluated appellant *Page 3 
and determined that she has the intellectual and cognitive capabilities of a seven to nine year old child. In his report[1] and recommendation, Dr. Graves opined:
 {¶ 5} "Therefore, it is my professional opinion, to a reasonable degree of psychological certainty, that Dawn is not presently capable of providing parental care for her son, Henry. It is unlikely that she will be able to meet the needs of this infant within the next few years * * *. Placement of Henry with her would, in my opinion, expose the child to a significant degree of neglect and instability. His health and well being would by [sic] significantly compromised, despite what appears to by [sic] positive intentions for him as a parent."
 {¶ 6} Other provisions of appellant's amended case plan required her to find employment, engage in parenting classes, and establish stable independent housing. On September 29, 2006, Fulton County Family Services filed a motion for permanent custody of Henry. At the request of Dr. Graves, the juvenile court appointed a guardian ad litem for appellant.
 {¶ 7} Dr. Graves also testified at the R.C. 2151.414 hearing. He stated that, in addition to a lower intellectual capacity, appellant lacks the ability to be consistent in her behavior, that she is very resistant to change, and that she is mistrustful. According to the psychologist, appellant lacks the capability to parent Henry at any time in the foreseeable future. When questioned on cross-examination as to whether Dawn could parent her *Page 4 
child with an "alternate caregiver," who would be there "all the time," the psychologist stated that even if this was done, Dawn would resist any other method of caring for Henry but her own. In short, Dr. Graves described Dawn as a person who cannot be directed; therefore, she cannot take advice and use it effectively. The psychologist testified that Henry had a "very, very slim chance" of a warm, stable, consistent, and positive environment if he was placed with his mother. In Dr. Graves' opinion, it would be in the best interest of Henry to award permanent custody to Fulton County Family Services.
 {¶ 8} Tracy Potter, an investigative social worker, who is employed by the Fulton County Family Services received referrals from medical professionals prior to Henry's birth. These involved alleged inadequate prenatal care, statements made by Dawn during medical appointments indicating that either her father or her brother was her baby's father, and Dawn's inability to take care of her child. During the course of her investigation of these allegations, Potter learned that appellant's parental rights to her first child were terminated and that appellant's family had an extensive history with the Lucas County "Child Protective Services."
 {¶ 9} Potter also made a visit to the residence where appellant was living with her father, her brother, and her sister Candice. This was the home in which Dawn was going to raise Henry. According to Potter, the yard surrounding the home was covered with debris, including oil pans, garbage, and broken glass. Potter and two other social workers had to pick their way to the front door. Appellant's sister came to the door and yelled at *Page 5 
the social workers; she put papers on the window so that they could not see in the windows. Initially, Dawn was also angry, but when Potter told her that they were there to see if the home was appropriate for Henry, she finally allowed the social workers to enter through a side door. Before they could enter, Candice had to carry out large bins of dirty dishes so that the social workers could gain access to the home.
 {¶ 10} Potter testified that the conditions inside the home were deplorable. There was only a small path to walk on and, if necessary, jump or step over various items, including garbage bags full of dirty dishes. More dirty dishes covered with mold were in the kitchen sink, and pans of spoiled food sat on the kitchen counter. Photographs taken by the social workers show that the rest of the house was also filthy with piles of household items, garbage bags, and cat feces. When they asked to see the baby's room, there were items, such as a high chair, just thrown into the room on a pile of debris that limited entry to the room to only one person. All of the baby items, including a "handful" of baby clothes were dirty. Potter also observed piles of kitty litter on the floor.
 {¶ 11} Potter further testified that, as well as Roy M.'s prison term for sexually assaulting his children, Dawn's brother, Roy, Jr. was very aggressive and engaged in aberrant behavior, and that Candice was very aggressive and angry. Potter further stated that the agency was unable to find any relatives who would take custody of Henry. Potter also contacted two individuals named by Dawn as potential caretakers for Henry. Upon investigation, neither individual proved to be an appropriate placement. The social worker also contacted the two named putative fathers, who both denied paternity. *Page 6 
 {¶ 12} Appellant's caseworker, Maurine Clymer, discussed appellant's case plan, which included finding suitable, safe housing for herself and her child that did not include anyone "who had a substantiated history with childrens' services in any [Ohio] county." Appellant was also to secure a stable source of income, either through employment or other independent means of having an income, e.g., social security. Additionally, Dawn was required to undergo the psychological assessment with Dr. Graves on the question of her ability to parent Henry, to attend parenting classes, to work with a home parenting mentor, and to have weekly contact with her caseworker, either by telephone or office visits.
 {¶ 13} Appellant did undergo the requisite psychological evaluation and did complete the parenting classes. She also visited Henry on a weekly basis. However, she only completed eight of the 20 or more sessions with the home parent mentor/aide. Furthermore, Dawn was still living with her father, sister, and brother; the conditions in the home had not improved. The last time that Clymer tried to visit appellant's residence, she was not allowed in the home. On previous occasions, Dawn and Candice "kicked" the caseworker out of the house. On another attempted visit, Candice threatened the caseworker with a large wrench. Moreover, Dawn made no attempt to find a source of a stable income, and she refused offers of a referral to obtain low income housing because she did not want to live independently.
 {¶ 14} As for the visits with Henry, Dawn was unable to calm Henry if he was crying. She declined to follow any suggestions made by the supervising monitor. During *Page 7 
the first month of the visits, the monitor discovered that because appellant was putting sugar free flavoring in the baby's water, he was fussy and had a stomach ache later that day. As a result, Dawn was not allowed to bring any food or bottles to visitation. Appellant also became angry and argumentative when she was told that Henry could not have any type of "juice" until he was at least four months old. In Clymer's opinion, appellant is incapable of parenting a child and of keeping her home in a habitable condition.
 {¶ 15} Clymer further testified that Henry has, thus far (he was approximately 20 months old at the time of the permanent custody hearing), shown no signs of the congenital disease suffered by his mother and that he was adoptable. She also testified that Henry needed a legally secure placement.
 {¶ 16} In his report and recommendation, Attorney Mark Hagans, Henry's guardian ad litem, noted that he read Dr. Graves' psychological evaluation of appellant and had opportunities to observe appellant's behavior during court proceedings and visitation. He described her as volatile and hostile. His observations related to visitation indicate that appellant ignored the fact that Henry was sleepy, that she changed his diaper when it did not need to be changed, and attempted to sit the baby upright to play with a toy when it was clear that the child was not old enough to sit up. After addressing each of the best interest factors, the guardian ad litem recommended that it would be in the best interest of Henry to be placed in the permanent custody of Fulton County Family Services. *Page 8 
 {¶ 17} On February 9, 2007, the juvenile court entered a judgment terminating the parental rights of appellant and awarding permanent custody of Henry to Fulton County Family Services. Appellant appeals this judgment and sets forth the following assignments of error:
 {¶ 18} "I. The trial court erred in granting the motion for permanent custody when the evidence presented at the heating was insufficient as a matter of law.
 {¶ 19} "II. The trial court erred in admitting the testimony of Dr. Kimberly Hagerman in violation of appellant's physician-patient privilege."
 {¶ 20} The standard applicable to appellant's Assignment of Error No. I is found in R.C. Chapter 2151.414.
 {¶ 21} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. Santosky v.Kramer (1982), 455 U.S. 745. Thus, parents have essential and basic rights to raise their own children. In re Murray (1990),52 Ohio St.3d 155, 157. These rights, however, are not absolute. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶ 23. Parental rights are always subject to the ultimate welfare of the child. In re Cunningham (1979),59 Ohio St.2d 100, 106. Nevertheless, before a juvenile court can terminate parental rights and award permanent custody to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B)(1). In re Christopher G, 6th Dist. No. L-06-1188,2006-Ohio-6294, ¶ 14. *Page 9 
 {¶ 22} Therefore, as pertinent to the instant case, the court below was first required to find that Henry could not be placed with appellant within a reasonable time or should not be placed with appellant. R.C.2151.414(B)(1)(a).
 {¶ 23} In reaching its determination of whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, a court is guided by R.C. 2151.414(E). This statutory section sets forth 16 conditions that the court is required to employ in making its determination. The statute provides that if the trial court finds by clear and convincing evidence that anyone of the 16 conditions exist, the court must enter the requisite finding. In re R.H., 8th Dist. No. 84051, 2004-Ohio-5734, ¶ 11.
 {¶ 24} The juvenile court must then also determine that, pursuant to the factors set forth in R.C. 2151.414(D), clear and convincing evidence shows that permanent custody is in the best interest of the child. R.C.2151.414(B)(1); In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 25} In her Assignment of Error No. I, appellant first contends that there was insufficient clear and convincing evidence in the record to establish that Henry could not be returned to her custody within a reasonable period of time. Specifically, despite acknowledging that the testimony of Dr. Graves was uncontroverted, appellant claims that his limited contact with her and an "inability to adequately test her functioning *Page 10 
establishes that his opinion was not based upon an adequate medical assessment." She also maintains that the psychologist's evaluation was tainted by his knowledge of the fact that another child was previously removed from her custody.[2] Appellant further argues that the fact that a child was previously removed from a mother's custody should not, standing alone, be sufficient to support a finding that a child cannot be placed with his parent within a reasonable time or should not be placed with his parent. Finally, appellant asserts that (1) the trial court failed to make any specific findings on the question of whether it was in the best interest of Henry to be placed in the permanent custody of Fulton County Family Services or to set forth the evidence in his judgment entry supporting these findings; and (2) clear and convincing evidence was not offered in the permanent custody hearing to support a finding that it would be in the best interest of Henry to award permanent custody to Fulton County Family Services.
 {¶ 26} Appellant contends, in essence, that the trial court's judgment is against the manifest weight of the evidence on the question of whether, premised on the grounds provided in R.C. 2151.414(E)(2) and (11), her child could not be placed with his mother within a reasonable period of time. *Page 11 
 {¶ 27} R.C. 2151.414 reads, in material part:
 {¶ 28} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 29} "* * *
 {¶ 30} "(2) Chronic mental illness, chronic emotional illness, mental retardation * * * of the parent is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds a hearing pursuant to division (A) of this section * * *.
 {¶ 31} "* * *
 {¶ 32} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 33} Contrary to appellant's assertions, the record reveals that Dr. Graves conducted a full psychological evaluation of appellant's mental health and her cognitive *Page 12 
ability in order to determine whether she was capable of parenting Henry. In reaching his opinion on this issue, Dr. Graves utilized a number of tests, including the Minnesota Multiphasic Personality Inventory, the Wide Range Intelligence Test, the Wide Range Achievement Test-III, Parental Strengths Questionnaires, and the Parent/Child Relationship Inventory. Furthermore, the psychologist conducted a clinical interview with Dawn and personally observed appellant (and her sister) interacting with Henry in his office. Accordingly, clear and convincing evidence supports the existence of the condition stated in R.C. 2151.414(E)(2).
 {¶ 34} Because the existence of only one of the conditions set forth in R.C. 2151.414(E) is necessary to a finding that a child cannot be placed with his parent within a reasonable time, we will not address the argument made by appellant with regard to R.C. 2151.414(E)(11).
 {¶ 35} Next, appellant asserts that (1) the trial court failed to make any specific findings on the question of whether it was in the best interest of Henry to be placed in the permanent custody of the Fulton County Family Services or to set forth the evidence in his judgment entry supporting these findings; and (2) clear and convincing evidence was not offered in the permanent custody hearing to support a finding that it would be in the best interest of Henry to award permanent custody to the Fulton County Family Services. We disagree.
 {¶ 36} R.C. 2151.414(D) requires a juvenile court to, in determining the best interest of a child, consider all relevant factors, which include, but are not limited to: *Page 13 
 {¶ 37} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 38} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 39} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 40} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 41} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 42} In his judgment entry, the trial court judge set forth all five of the factors listed in R.C. 2151.414(D). While the judge did not make a separate finding as to each factor, except for expressly holding that Henry was in need of a legally secure placement, see R.C.2151.414(D)(1), he stated that he considered those factors in determining that it is in the best interest of Henry to award permanent custody to Fulton County Family Services. Furthermore, the judge set forth facts relating to the applicable factors that indicate he did, indeed, consider those factors. *Page 14 
 {¶ 43} Specifically, the judge discussed the inability of appellant to parent her child during visitation, e.g., she could not stop his crying, and her unreasonable expectations of a child of his age. See R.C.2151.414(D)(1). He also mentioned appellant's intellectual and emotional levels that led to her inability to parent her child and that, regardless of the services that could be offered to her, her condition would not likely change. Id. The judge cited Tracy Potter's testimony, as well as certified copies of documents from Tuscarawas County, Ohio, that were related to the termination of appellant's parental rights to her first child. See R.C. 2151.414(D)(5). He noted that appellant was living with her father, who had been convicted of having incestuous relationships with his children. See R.C. 2151.414(D)(1). Although not directly mentioned by the trial court, it is undisputed that Henry was in the custody of the Fulton County Family Services for all but one day of his life, see R.C. 2151.414(D)(3), and that he was too young to express a wish on the subject of a legal custodian, see R.C.2151.414(D)(2). Accordingly, we conclude that the trial court did consider the best interest factors listed in R.C. 2151.414(D), and that clear and convincing evidence supported the court's finding that it was in the best interest of Henry to award permanent custody of Henry to Fulton County Family Services.
 {¶ 44} For the foregoing reasons, appellant's Assignment of Error No. I is found not well-taken.
 {¶ 45} In her second assignment of error, appellant contends that the trial court erred in permitting Dr. Kimberly Hagerman to testify on communications that occurred *Page 15 
within the context of the physician-patient privilege at the hearing on appellee's motion for permanent custody. She claims that this testimony "damaged her." Appellant cites to approximately six pages of testimony given by Dr. Hagerman as being violative of the physician-patient privilege found in R.C. 2317.02. However, appellant lodged an objection to only one portion of that testimony.
 {¶ 46} Dr. Hagerman, a family physician, testified that appellant came to her office when she was 37 weeks into her pregnancy. When asked whether there were any concerns with regard to appellant's pregnancy, the doctor testified that there were concerns because she would have to deliver the baby by means of a Caesarean Section, which is normally performed at 38 weeks gestation. Dr. Hagerman then added: "Most pregnant women refer to their baby as the baby, or * * * they have the baby's name picked out, and they're affectionate to the baby. She [Appellant] referred to the baby as it and consistently wanted it out of her and didn't want it to be around her, in her belly." Appellant objected to this testimony as privileged communications between a physician and her patient. The attorney representing Fulton County Family Services then argued that this testimony concerns possible abuse or neglect of, presumably, appellant's baby, and is, therefore, not a privileged communication pursuant to R.C. 2151.42. The trial court overruled appellant's objection.
 {¶ 47} Assuming, arguendo, that appellant did not seek prenatal care until 37 weeks gestation and that the statement made by appellant relative to her unborn child was privileged, any error in admitting this statement was harmless because overwhelming *Page 16 
clear and convincing evidence established that Henry could not be returned to his mother's care within a reasonable time and that it was in his best interest to award permanent custody to Fulton County Family Services. In re Lane, 3d Dist. Nos. 9-03-61 and 9-03-62, 2004-Ohio-2798, ¶ 45-46. Appellant's Assignment of Error No. II is found not well-taken.
 {¶ 48} The judgment of the Fulton County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski P.J., Arlene Singer, J. CONCUR.
[1] The psychologist's evaluation and report took place prior to the time that appellee decided to seek only temporary custody of Henry.
[2] Appellant also argues that Dr. Graves indicated that appellant could adequately parent her child if aided by a constant alternative caregiver. However, the psychologist's statement was "I don't, I can't imagine uh, enough services short of, a constant caregiver, um, which I think is unrealistic and unlikely. But then, that's not Dawn doing the parenting." He also observed that Dawn would be extremely resistant to any child-rearing techniques but her own. *Page 1