DECISION AND JUDGMENT ENTRY
{¶ 1} This case comes before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellants, Melvin S. and Jailyn S. *Page 2 
 {¶ 2} Appellants are the parents of one child, Zane S., born March 29, 2005. On June 2, 2005, appellee, Lucas County Children Services Board ("LCCSB"), filed a complaint in dependency and neglect. LCCSB alleged that: (1) there was ongoing domestic violence between Melvin and Jailyn; (2) both parents threatened to commit suicide if Zane was removed from their care; (4) Jailyn was frustrated by Zane's needs and threatened to shake him; and (4) Jailyn, who was diagnosed as having bipolar disorder with psychotic features, left a medical facility without obtaining medication for her condition. Subsequently, appellants consented to a finding of dependency and neglect.
 {¶ 3} Case plans were formulated for Melvin, Jailyn, and Zane with an initial goal of reunification. On May 2, 2006, however, LCCSB filed a motion for permanent custody of Zane. The children services agency alleged that although the parents achieved some of the goals set forth in their case plans, Jailyn had not begun any marriage counseling or parenting classes because she failed to fully address her mental health needs, in particular, anger management. Melvin completed his counseling for domestic violence and anger management and, at the time of the permanent custody hearing, had completed a parenting class. According to the permanent custody motion, the parents were living with Melvin's mother and had no source of income.
 {¶ 4} At the hearing on appellee's motion for permanent custody, the following evidence was adduced. *Page 3 
 {¶ 5} When he was born doctors initially believed that Zane was blind and had cerebral palsy. He cried most of the time and continues to cry a great deal of the time. As of the date that the motion for permanent custody was filed, Zane could not stand by himself or walk. He was already wearing thick glasses, and he wears a patch over his right eye three times per week.
 {¶ 6} According to Zane's pediatrician, Tracy Karoly, M.D., Zane suffers from chronic ear infections and upper respiratory infections which led to his reactive airway disease. The doctor opined that the child's reactive airway disease would eventually develop into asthma. Because at the age of 18 months, he rarely sleeps, Zane is seen by a neurologist. Zane participates in pulmonary therapy, speech therapy, and occupational therapy, which helps him sit up, crawl, and eat solid food. Dr. Karoly classified Zane as a "medically fragile child" who needs a two parent home. The cause of Zane's physical disabilities was, at the time of the permanent custody hearing, not yet determined.
 {¶ 7} As stated previously, Jailyn was diagnosed as having bipolar disorder with psychotic features, as well as attention deficit/hyperactivity disorder. Jailyn has anger management problems that gave rise to the domestic violence between the parties. The one time that Melvin asked Jailyn to take care of Zane during the night, she became very frustrated and told Melvin to care for him. Melvin found the baby lying on the floor. A few days later, Jailyn told Melvin that she was going to shake her baby. This remark led Melvin to contact LCCSB to see if he could receive some help in protecting Zane. At the time of the hearing on the motion for permanent custody, Jailyn was living with a friend *Page 4 
but Jacquelyn Harris, Jailyn's LCCSB caseworker, testified that Jailyn still had frequent contact with Melvin, including, but not limited to, spending time together flying kites, spending the night in Melvin's trailer, and, on a separate occasion, having Melvin dye her hair at his trailer.
 {¶ 8} According to Ana Ulrich, a parent aide mentor who supervised Jailyn's visitation with her son from May 2006 to July 2006, Jailyn was lacking in the area of basic parenting skills, for example, diapering her very active child. However, Ulrich also noted that Jailyn could be patient with Zane and that there was a bond between mother and son.
 {¶ 9} On the other hand, Ulrich testified that Jailyn had anger problems when interacting with other people, especially Melvin. Ulrich described the relationship between Jailyn and Melvin as a "love-hate" relationship with Jailyn acting as the aggressor during the couples' confrontations. For example, in August 2005, during an argument between Jailyn and Melvin, Jailyn grabbed Melvin's testicles. The police were called, and Jailyn was convicted of disorderly conduct. In July 2006, Jailyn was unable to get home because the streets were flooded. She called Melvin to come and get her. He was unable to do so due to the flooded streets, but he did not call Jailyn and tell her this. She then sent him angry and profane text messages. In that same month, Zane had surgery to place tubes in his ears to prevent ear infections. Melvin and Jailyn had a heated argument concerning the delivery of a television set in the hospital waiting room/lobby. Security was contacted. The security officer then asked Zane's foster father, *Page 5 
Jason, whether Jailyn and Melvin should be allowed in the recovery room. Because no one from LCCSB was present, Jason, in assuming responsibility for Zane, decided that Jailyn and Melvin should not be allowed access to the recovery room.
 {¶ 10} During the hearing on LCCSB's motion for permanent custody, Melvin testified that he had purchased a trailer and was living there alone. He asserted, however, that if he was given custody of his child, he would move back in with his mother and stepfather. Melvin professed a fear of Jailyn for both himself and Zane. He insisted that he was going to divorce Jailyn, but the testimony from Jacquelyn Harris, as set forth infra, indicated Melvin was seeing Jailyn frequently. Additionally, Harris testified that Jailyn told her that if Melvin was able to regain custody of his child, Jailyn could see Zane. Melvin contended, nonetheless, that the last time that he saw Jailyn was July 14, 2006, approximately three months before the permanent custody hearing. He claimed that he did not want to see Jailyn any more because he did not want "violence" in his life. He admitted, nevertheless, that the last time that Jailyn "came around" his trailer was "three weeks to a month ago."
 {¶ 11} Melvin further testified that he was working 40 hours a week as a state certified nurse assistant taking care of six mentally retarded developmentally disabled adults and performing many of the same functions, such as diapering and bathing, that he would need to perform for Zane. He stated that he had a good relationship with Zane's foster parents, Jason and Emily C. Melvin was aware of most, if not all, of Zane's medical and physical problems. *Page 6 
 {¶ 12} Kim Jastremski, who taught Melvin's interactive parenting class, stated that Melvin developed a bond with Zane. Even though he passed the class, Melvin had difficulty with reading, and some of the questions had to be asked orally. Jastremski recommended more parenting classes for Melvin if he was granted custody of his son. Evidence was offered to show that neither Jailyn nor Melvin attended Zane's numerous physician's appointments, and that the time that they did come to the hospital when Zane had tubes put in his ears, they were not permitted to see him because of their argument.
 {¶ 13} Melvin's mother, Linda B., testified that Melvin and Zane could reside in her home[1], if necessary, and she would act as a "backup" caretaker. She also testified that Melvin was the "victim," either mentally and/or physically, when Jailyn became angry. Linda was afraid that Jailyn would abuse Zane.
 {¶ 14} Zane's guardian ad litem, Eva Vindas, also provided testimony at the permanent custody hearing. She visited Melvin's trailer in September 2006. According to Vindas, "the windows were filthy, parts of the house were not completely finished," the home was cluttered, and there was a "tremendous smell of urine" emanating from the carpet. Melvin had a puppy, which was ostensibly the source of the smell. Vindas also testified that Melvin appears to have "stumbled" through day-to-day living and often told her that he does not know what to do unless someone tells him. Vindas was of the opinion that Melvin and Jailyn have an ongoing relationship that they are "trying to *Page 7 
hide." Based upon the foregoing and Zane's physical difficulties, Vindas recommended that permanent custody of the child be awarded to LCCSB.
 {¶ 15} Jason testified that when four-month-old Zane was placed in his and Emily's home, the child was "very flat, very listless, and didn't do anything but a quiet moan." It was believed that Zane was blind and had cerebral palsy. Zane also had an oral aversion to solid food. The foster father stated that Zane now walks, talks, and eats, but prefers to feed himself without any utensils. Zane requires four breathing treatments per day and gets sick frequently. Normally, Zane does not sleep very much (He gets up between 4:30 a.m. and 5:00 a.m. when he's not sick.), and when he is ill he doesn't sleep at all or sleeps very little.
 {¶ 16} Although there are seven children, including foster children, in the foster parents' household and he has a full time day job, Jason takes care Zane if he wakes up during the night and gets up with him in the morning. Zane cries "a lot" and, at the time of the permanent custody hearing, was currently pulling out his hair. The foster father declared that it would be very difficult for one person to take care of Zane.
 {¶ 17} Emily, Zane's foster mother, quit work to stay at home with the children. She testified that she and her husband have an extensive support system including a nurse from Help Me Grow in Wood County, a vision therapist, the professionals providing services in Lucas County, friends, and family members. According to Emily, the neurologist told her that Zane's speech delays were not only due to a hearing problem that arose because his ears were "plugged up" until the tubes were implanted, but was also *Page 8 
due to a previous lack of stimulation. Emily testified that two of her foster children are very close to Zane's age and that she believes that playing with these children aided Zane in his development. Both foster parents were taking special needs training to be certified as a "medically fragile" foster home in order to help Zane and any other children that they might foster "down the road."
 {¶ 18} After hearing all of the evidence and considering the guardian ad litem's recommendation, the juvenile court found that Zane could not or should not be placed with either of his parents within a reasonable time. The court based this conclusion on findings set forth in R.C.2151.414(E)(4), (E)(14), and (E)(16). The court further determined that it was in the best interest of Zane to terminate appellants' parental rights and award permanent custody to LCCSB.
 {¶ 19} Jailyn and Melvin filed separate notices of appeal and separate assignments of error. Jailyn's assignments of error are as follows:
 {¶ 20} "I. The trial court's Finding [sic] that the child could not nor should not be placed with appellant within a reasonable time was not supported by clear and convincing evidence.
 {¶ 21} "II. The trial court erred when it found permanent custody was in the best interest of this child by considering the affluence of the foster parents and failing to consider the bond between the child and the appellant and the ability of the child to be returned to his parents within a reasonable time." *Page 9 
 {¶ 22} Melvin separately appeals the trial court's decision and alleges that the following errors occurred in the proceedings below:
 {¶ 23} "Assignment of Error No. 1: The trial court erred in terminating Father's parental rights because the trial court failed to consider Zane's bond with Father and testimony that Father could parent Zane if he received community support.
 {¶ 24} "Assignment of Error No. 2: Father was willing to provide an adequate home for Zane thus a finding under O.R.C. 2151.414(E)(4) was not supported by the evidence.
 {¶ 25} "Assignment of Error No. 3: Pursuant to In the Matter of SeanB. . . ., trial courts shall not consider support systems when terminating parental rights; a finding under O.R.C. 2151.414(E)(14) predicated on the quality of father's support system is thus in error.
 {¶ 26} "Assignment of Error No. 4 A finding under O.R.C.2151.414(E)(16) was unsupported by the evidence.
 {¶ 27} "Assignment of Error No. 5 The trial court erred in granting custody of Zane to LCCSB because father is a suitable parent."
 {¶ 28} The same standard of review is applicable to both parties' assignments of error.
 {¶ 29} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. Santosky v.Kramer (1982), 455 U.S. 745, 752. Thus, parents have essential and basic civil rights to raise their own children. In re *Page 10 Murray (1990), 52 Ohio St.3d 155, 157. These rights, however, are not absolute. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at¶ 23. Parental rights are completely subject to the ultimate welfare of a child. In re Cunningham (1979), 59 Ohio St.2d 100, 106. Nevertheless, before a juvenile court can terminate parental rights and award permanent custody to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B)(1). In reChristopher G, 6th Dist. No. L-06-1188, 2006-Ohio-6294, ¶ 14.
 {¶ 30} Therefore, as pertinent to the instant case, the court below was first required to find that Zane could not be placed with either Jailyn and/or Melvin within a reasonable time or should not be placed with appellants. R.C. 2151.414(B)(1)(a). In reaching its determination of whether a child cannot be placed with either or both parents within a reasonable period of time or should not be placed with either or both parents, a court is guided by R.C. 2151.414(E). This statutory section sets forth 16 conditions that the court is required to employ in making its determination. The statute provides that if the trial court finds by clear and convincing evidence that any one of the 16 conditions exist, the court must enter the requisite finding. In re R.H., 8th Dist. No. 84051, 2004-Ohio-5734, at ¶ 11.
 {¶ 31} The juvenile court must then also determine that, pursuant to the factors set forth in R.C. 2151.414(D), clear and convincing evidence shows permanent custody is in the best interest of the child. R.C.2151.414(B)(1); In re William S. (1996), *Page 11 75 Ohio St.3d 95, 99. Clear and convincing evidence is that evidence which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 32} Because Jailyn and Melvin filed separate appeals and, evidently, have abandoned any argument that they could parent Zane together, we shall address the issues raised in their appeals separately.
 {¶ 33} In her Assignment of Error No. I, Jailyn contends that clear and convincing evidence does not support the trial court's finding that Zane could not be placed with her within a reasonable time or should not be placed with her.
 {¶ 34} R.C. 2151.414 reads, in material part:
 {¶ 35} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 36} "* * * *Page 12 
 {¶ 37} "(E)(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
 {¶ 38} "* * *
 {¶ 39} "(E)(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional or sexual abuse or physical, emotional or mental neglect.
 {¶ 40} "* * *
 {¶ 41} "(E)(16) Any other factor the court considers relevant."
 {¶ 42} Initially, Jailyn claims that she has shown a willingness to provide Zane with an adequate permanent home. Nonetheless, it is undisputed that Jailyn did not begin her counseling with Lutheran Social Services until July 2006, and that she and her counselor had only completed an assessment and service plan as of the date of the permanent custody hearing. While Jailyn completed an anger management class in March 2006, she never participated in a parenting class. Jailyn was still living with a friend and working at Party City and Taco Bell. She had been fired from "Popeye's" due to an argument with her employer Furthermore, Jailyn failed to attend any of Zane's many physician's appointments. When her child was in the hospital and Jailyn was in the lobby/waiting area, she chose to fight with Melvin over the delivery of a television set thereby foreclosing her opportunity to see Zane in the recovery room. *Page 13 
 {¶ 43} We agree that there was some testimony offered by individuals who supervised her visits with Zane to show that Jailyn bonded with her child and had progressed somewhat in the basic skills necessary to take care of a child. This progress was insufficient, however, for a mother who becomes easily frustrated when dealing with a child who has Zane's physical and neurological problems. Moreover, because Jailyn failed to participate fully in the goals of her case plan and, in all likelihood, she would need more training in order to care properly for Zane, we cannot say that Zane could be returned to his mother within a reasonable period of time. Accordingly, we find that clear and convincing evidence of Jailyn's actions (or inactions) was offered at the permanent custody hearing to show that she was unwilling to provide an adequate permanent home for Zane. Because a juvenile court is required only to determine that one of the conditions in R.C. 2151.414(E) exist, we will not address Jailyn's arguments with regard to R.C. 2151.414(E)(14) and (16). Accordingly, the juvenile court judgment finding that Zane could not be placed with Jailyn within a reasonable time or should not be placed with Jailyn within a reasonable time is supported by clear and convincing evidence. Jailyn's Assignment of Error No. I is found not well-taken.
 {¶ 44} Jailyn's Assignment of Error No. II contends that the trial court erred when it found that awarding permanent custody of Zane to LCCSB was in the best interest of Zane because the court (1) considered the affluence of the foster parents; (2) did not consider the bond between Jailyn and Zane; and (3) did not consider the ability of the child to be returned to his parents within a reasonable time. *Page 14 
 {¶ 45} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. § 2151.414(D). These factors are:
 {¶ 46} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 47} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 48} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 49} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 50} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 51} Upon review, we find that that there is no evidence in the record of this cause indicating that Zane's foster parents are affluent or that the trial court considered "affluence" in determining the best interest of Zane. Moreover, there is nothing in the record to show that the juvenile court based its "best interest" decision on testimony that Zane's foster parents could "take better care" of Zane than Jailyn. *Page 15 
 {¶ 52} The court did find that Zane had lived most of his life outside his parents home with foster parents who could adopt him, that Zane was with his parents only in a "protected setting" during that time, and that Zane's guardian ad litem recommended that permanent custody of Zane be awarded to LCCSB. Clearly, in making the finding that Zane was with his parents in only a protected setting, the court had to consider the bond between Zane and his natural parents. Furthermore, the trial court was required not only to consider Jailyn's bond with Zane, but also the interaction and interrelationship of this child with his foster parents whose bond with Zane was also made evident through their testimony. Accordingly, we find that the Jailyn's Assignment of Error No. II is found not well-taken.
 {¶ 53} We shall now address Melvin's assignments of error.
 {¶ 54} In his first assignment of error, Melvin asserts that, in determining the best interest of Zane, the trial court failed to consider R.C. 2151.414(D)(1) with regard to the child's bond with his father. Melvin also challenges the guardian ad litem's basis for recommending that permanent custody be awarded to LCCSB.
 {¶ 55} On the first issue raised by appellant, we agree that Kim Jastrzemski did testify that Melvin did well/bonded with Zane during his interactive parenting class and would do well, with community support, if given custody of Zane. On cross-examination, however, Jastrzemski admitted that she had never seen Melvin's home and did not know the extent of Zane's physical and neurological problems. The trial judge did, in essence, acknowledge Jastrzemski's assessments when he observed that Melvin *Page 16 
had only interacted with his child in a protected setting. Therefore, we find that the lower court did consider Melvin's relationship with his son in determining the best interest of Zane.
 {¶ 56} Melvin next points out a number of statements made by Zane's guardian ad litem that are allegedly irrelevant, occurred before Melvin "finished his case plan," or are purportedly unsupported by the evidence. Our review of the guardian ad litem's report and recommendation and her testimony reveals that she did make many of the statements cited by Melvin. Her report, however, speaks to the central difficulty in recommending the return of Zane to his father's custody. That provision reads:
 {¶ 57} "This child has numerous medical needs that will require much attention, patience, persistence, and strong parenting skills. [Jailyn] is clearly unable to care for the child. [Melvin], the stronger possibility of the two, has not been completely honest regarding his relationship with his wife. He reported being fearful of her and of what she could do to both him and the child. [Melvin] reported that even in his daily life he sometimes does not know what to do unless he is told what to do.
 {¶ 58} "The child is medically fragile and these parents can barely take care of themselves, [they] surely cannot be trusted to keep this child safe, healthy, and free from further injury. * * * [The] parents' actions and inability to protect have resulted in this child being in foster care for the last 16 months. They are unable to protect and properly care for this child. It is my belief that neither parent can provide a safe and stable *Page 17 
environment for this child. For the child's welfare and safety neither parent should have custody."
 {¶ 59} Based upon the foregoing, we cannot say that the guardian ad litem's recommendation that it was in the best interest of Zane to award permanent custody to LCCSB was buttressed only by irrelevant, untimely, and/or unsupported statements. Accordingly, Melvin's first assignment of error is found not well-taken.
 {¶ 60} In his second assignment of error, Melvin urges that no clear and convincing evidence was offered to demonstrate that he is unwilling to provide Zane with an adequate home. Melvin premises this assertion on the fact that he has a trailer that he is working on and is ready and willing to move in with his mother if he was awarded custody of Zane.
 {¶ 61} Based upon a review of the record of this case, we have no doubt that Melvin wants to care for his son and that he has shown a commitment to Zane by visiting his child and completing the services offered by LCCSB. Clear and convincing evidence was offered, nonetheless, to establish that Melvin was unwilling to establish an adequate permanent home for a medically fragile child such as Zane. Melvin's trailer was described as small, dirty, smelly, and cluttered. Moreover, there was testimony to the effect that Melvin, despite his assertions to the contrary, was seeing Jailyn and wanted to live with her if he obtained custody of Zane. While Melvin's mother testified that Melvin and Zane could live with her and that she would act as his "backup," in caring for Zane, there was also evidence offered to show that she was previously unable to care for Zane *Page 18 
due to her physical infirmities. Accordingly, we conclude that the trial court did not err in finding that the condition in R.C. 2151.414(E)(4) existed and that, therefore, Zane could not be placed with his father within a reasonable time or should not be placed with his father. Melvin's second assignment of error is found not well-taken.
 {¶ 62} Melvin's third and fourth assignments of error are rendered moot because the juvenile court needed only to conclude that one of the conditions set forth in R.C. 2151.414(E) was proven by clear and convincing evidence in order to hold that Zane could not be placed with his father within a reasonable amount of time or should not be placed with his father.
 {¶ 63} In his fifth assignment of error, Melvin contends that the trial court erred in granting permanent custody to LCCSB because he is a suitable parent. Melvin recognizes, nonetheless, that if one or more of the conditions in R.C. 2151.414(E) is supported by clear and convincing evidence, a parent may be deemed unsuitable. See In re Heaven G., 5th Dist. No. L-06-1362, 2007-Ohio-3313, ¶ 40 and ¶ 41. To repeat, we have concluded that at least one such condition does exist; therefore, Melvin's fifth assignment of error is found not well-taken.
 {¶ 64} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal *Page 19 
pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR.
[1] However, Zane was initially placed in Linda's home after LCCSB obtained temporary custody of the child, but she had physical problems that prevented her from taking care of Zane full time. Zane was then placed with his foster parents. *Page 1